OCTOBER AND NOVEMBER TERM, 1884, No. 25.    OCTOBER 20, 1884.

# Smith *v.* Linn.

1. An antenuptial settlement not intended by the parties to be of binding force, executed and shown to the grown-up children of the husband in order to remove their objections, may be annulled and destroyed by the husband, with consent of the wife, after the marriage.

2. Her consent, during the coverture and after its removal, confirms and ratifies the annulment.

3. His children have no such interest in the agreement as to give them a right to object.

4. Nor has a purchaser from the assignee in bankruptcy of the husband any such right.

Before MERCUR, C. J.; GORDON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ.; PAXSON, J., absent.

Error to the Court of Common Pleas of *Washington County.*

Dower by Mary Maria Linn against W. W. Smith to recover her common law dower in land bought by Smith from the assignee in bankruptcy of her husband, James Linn, Sr.

At the trial, November 15, 1883, before WHITE, J., the following facts appeared:

In 1860, James Linn, Sr., was the owner of the land in question. In that year he married the plaintiff, who was his second wife. He had, at the time of his marriage, six grown children by his first wife. The plaintiff had a personal estate in money of $2,070. It was agreed between her and Linn that each should enjoy their own estate after marriage, but in the event of death, the survivor was not to claim an interest in the estate of the other. The contract was reduced to writing and signed by both parties. As to this agreement, Mrs. Linn testified as follows:

"It was just concerning whatever each other possessed, to pacify his children at home. There was some half dozen of them. They were grown up. That was the arrangement before there was pen put to paper. They were opposed to my getting any part of his estate by my marriage, and to reconcile them we made this agreement. He was to destroy it right away whenever the children were made acquainted with it. I could not state it word for word, but each one was to have his own property; neither to claim an interest in the property of the other. That was the sum and substance of it. Each one was just to

have and hold their own, without any claim on the estate of the other. 　*　　*　　*

When he proposed it, he just said it was to pacify the children. Nothing more nor less. I would sign it on no other condition, only for him to destroy it, and that was what he proposed ; that was part of the agreement at the time—that it should be destroyed. 　*　　* 　He told me he had destroyed it at the time he borrowed my money."

Mrs. Linn testified that after the marriage Linn destroyed the writing. Robert Linn, a son of James Linn, also testified that his father had told him that he had destroyed the agreement.

In 1872, Linn was adjudged a bankrupt, and under an order of the District Court of the United States, his land was sold by the assignee to W. W. Smith. Linn died in 1875.

The Court charged the jury, *inter alia,* as follows :

"From the evidence, she was married to Mr. Linn in 1860. He died in 1875. She testifies that prior to their marriage they had an article of agreement signed by them, which may be called an antenuptial contract, or agreement, that she was to retain her own property, and he was to retain his ; and that he was to have no interest in her estate, nor she in his estate. [According to her testimony as to the contents of that agreement, I think it would have barred her dower in his estate, had it not been destroyed.] She testifies to you that the agreement was entered into, not in good faith, but as an imposition on the children of Mr. Linn, who were grown up and who were opposed to his marriage. She testifies that she would not have signed the agreement except upon the condition that it was to be destroyed. It was to be shown to the children for the purpose of satisfying and pacifying them, and was then to be destroyed ; and she says that after their marriage it was destroyed by her husband ; that she had some $2,000 of her own money ; that he borrowed that money from her about the year 1862, and gave her a note for it, and at that time he told her that paper was destroyed. Mr. Linn's son also testifies that his father told him he had destroyed the paper ; and he says that was, he thinks, seven or eight years after they were married, which would bring it to about 1867 or 1868. [The question of law has been raised by the defendant's counsel that Mr. Linn could not destroy that agreement ; that he and his wife, before their marriage, having entered into such a contract, in which she substantially agreed not to claim any dower

in his estate, that afterwards it could not be destroyed. I decline to sustain that proposition of law, and I say to you ·that it was competent for the two parties, husband and wife, after their marriage, to agree and have that paper destroyed, and that if they both agreed to destroy it, it would enable him to claim an interest in her estate, and enable her to claim an interest in his.

The children of Mr. Linn have no vested interest in his property. They had no such interest in his property as would prevent their father from destroying that paper, and allowing his wife to claim her dower interest in his property. He could have held her to that agreement, and, if he had preserved the paper and held her to the agreement, she could not claim dower here now. But if it was destroyed with her consent, and for the purpose of doing away with that agreement, it would let her in to claim her dower in his estate, at law.]

After Mr. Linn, was put into bankruptcy, by regular proceedings in bankruptcy, and after the creditors, by the proceedings in bankruptcy, had commenced them against his estate—if at that time his widow was entitled to no dower in his estate, it would be a fraud by Mr. Linn upon his creditors to destroy that paper; and I say that, unless that agreement was destroyed before the proceedings in bankruptcy, it could not be destroyed so as to allow her to come in and claim her dower.

The only question then left for you to pass upon, or, I may say, two questions, are: First, was that paper destroyed with the consent of Mr. Linn and his wife? and, second, was it destroyed before the proceedings in bankruptcy were commenced? These proceedings were commenced on the 19th of September, 1872; he was adjudicated a bankrupt on the 19th of November, 1872. Was the paper destroyed before that time?

If it was, with the consent of both parties, then I say to you she is entitled to her dower in the property."

Verdict for plaintiff and judgment thereon.

The defendant took this writ, assigning for error, *inter alia*, the portions of the charge in brackets as above.

*Braden & Miller* for plaintiff in error.

The agreement between the plaintiff and James Linn, Sr., was entered into in contemplation of marriage.

At the time this agreement was made, the plaintiff was free to act for herself. It was a contract which she was competent to make, and which she deliberately entered.

[Brewer *v.* Scott *et al.*]

into. The children of Linn were virtually parties to it. It was made for their benefit.

The contract, having been made and reduced to writing, was signed by the plaintiff and James Linn, and then exhibited to his children. It satisfied them that the plaintiff would not make any claim to their father's estate. The marriage then took place, and then, by force of this contract, the right of expectancy of Linn's children in their father's estate was recognized by him, and by the plaintiff it was assured to them.

But now, after the estate of James Linn is bankrupt, and after her own estate is gone, she says, as between herself and James Linn, the antenuptial contract had no other purpose than to serve as a means of deception on the children of Linn; that it was understood between them, that after the writing had been submitted to his children to satisfy them that she would not make any claim to his estate, that then it was to be destroyed. To permit such a defense to prevail would be to sanction fraud.

*J. R. Braddock* and *J. R. Forrest,* for defendant in error, relied upon Gangwere's Estate, 2 Harris, 417.

NOVEMBER 3D, 1884.—PER CURIAM : It appears that the writing, in regard to which this contention arises, was not intended by the parties thereto to be of binding force. With the consent of his wife, the husband had a right to annul and destroy it, so far as his rights and benefits were concerned. His children had no such interest therein as to give them a right to object. His wife assented to his action so far as she could during her coverture, and since its removal, confirms and ratifies the same. The evidence was properly received and correctly submitted to the jury.

Judgment affirmed.